*La sentencia apelada debe ser confirmada.*

EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAFAEL NÁTER, acusado y apelante.

No. 4270.—*Sometido:* Febrero 10, 1931. *Resuelto:* Marzo 3, 1931.

876

*Celestino Iriarte,* abogado del apelante; *R. A. Gómez,* abogado de *El Pueblo,* apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del tribunal.

Este es un caso de seducción visto ante un jurado. El acusado fué condenado a tres años de presidio y, no conforme, apeló, señalando en su alegato la comisión de tres errores, a saber: 1, falta de jurisdicción en la corte sentenciadora por no haberse probado que el delito se cometiera en su distrito; 2, falta de prueba de haberse realizado acto carnal alguno, y 3, falta de prueba de que la mujer se entregara a virtud de la promesa de matrimonio que le hiciera el acusado.

La prueba es tan clara sobre el hecho de haberse cometido el delito dentro del término municipal de Manatí, que corresponde al distrito judicial de Arecibo, y con respecto a la realización del acto carnal, que no nos detendremos en los dos primeros errores. Bastará decir que no existen.

Es por el tercer error que se levanta la única cuestión dudosa en el recurso. El apelante la argumenta así, en su alegato:

"La declaración de la supuesta ofendida (páginas 3, 4, 5, y 6 del récord) demuestra que el acto carnal realizado por ella con el acusado, si es que tal acto existió, fué contra su voluntad y ven-

ciendo la resistencia que ella opusiera, como aparece claramente de las siguientes manifestaciones:

" '. . . y al llegar a un sitio oculto apagó el carro y me tomó por un brazo, a la mala y me hizo bajar.

" 'P. ¿Y cuando llegó a la casa de su cuñado?—Me quejé a él en seguida, porque no había sido con gusto mío.

" 'P. ¿Entonces Ud. no lo hizo voluntariamente?—No, señor.

" 'P. ¿Fué contra su voluntad?—Sí, señor; contra mi voluntad. Me obligó a hacerlo.

" 'P. ¿Ejerció violencia contra usted?—Violencia.

" 'P. ¿Qué violencia?—Me violó, porque me obligó.

" 'P. ¿Ud. no accedió a eso?—No, señor.

" 'P. ¿Dijo que lo había hecho tres veces?—Sí, señor.

" 'P. ¿Siempre contra su voluntad?—Sí, señor.

" ' . . . .

" 'P. ¿Y Ud. se opuso?—Me opuse que no, y no me atendió.

" 'P. ¿Aun cuando él le ofrecía matrimonio, casarse, no quería?

" 'El decía que tenía que humillarme a él para luego casarse y yo no quería; que mejor se retirara y me dejara como antes.

" 'P. ¿No se entregó a él porque él le ofreciera casarse con Ud.?

" 'No me entregué.'

"El delito de seducción consiste en inducir a una mujer a abandonar la senda de la virtud y obtener su consentimiento para el acto carnal ilícito en virtud de las promesas hechas en el momento. La promesa y, en consecuencia de la misma, el rendimiento de su virtud es el quid (gist) del delito. *Putnam v. State,* 16 S. W. 97. *Spenrath v. State,* 48 S. W. 192.

"Si la ofendida Gregoria Rodríguez, no se entregó al acusado voluntariamente, descansando en la promesa de matrimonio que exige la ley, sino que realizó el acto contra su voluntad vencida por la fuerza y la violencia del acusado, entonces se trataría de una violación y no de una seducción."

No hay duda alguna que, de acuerdo con la historia de la ley penal, con los términos en que está redactado nuestro estatuto, a saber: "Toda persona que bajo promesa de matrimonio sedujere a una mujer soltera. . . ," (artículo 261 del Código Penal), y con la jurisprudencia, el consentimiento de la mujer obtenido tras la promesa de matrimonio es necesario. Si la mujer jamás cedió y el acto se realizó a virtud de la fuerza o bajo las otras circunstancias especificadas en el

artículo 255 del Código Penal, la ofensa será constitutiva de violación, no de seducción.

Ruling Case Law, resumiendo la jurisprudencia sobre la materia, dice:

"Un elemento esencial del delito de seducción es el consentimiento de la mujer al acto del coito, y debe presumirse que ella es capaz de prestar su consentimiento si tiene la edad necesaria para contraer matrimonio, aunque puede ser de tan corta edad que su consentimiento no sirva de protección al acusado, si se tratara de un proceso por el delito de violación. Una acusación por el delito de seducción no puede sostenerse con prueba de que el acusado realizó su objeto valiéndose de fuerza, y él tiene derecho a tal instrucción si hay prueba de fuerza. La ofensa puede constituir algún otro delito, cual violación o fornicación, pero no puede constituir seducción." 24 R.C.L. 763.

Y Cyc. se expresa así:

"En un proceso criminal por seducción, prueba del uso de fuerza, que hace que el delito sea de violación, echará abajo la acusación. . ." 35 Cyc. 1296.

"No puede sostenerse una acusación por el delito de seducción cuando la prueba demuestra que la mujer no consintió y que se hizo uso de fuerza, de suerte que el delito cometido fué el de violación. Pero si en realidad se obtuvo el consentimiento, el hecho de que también se hiciera uso de fuerza, como cuando se trata de ligera oposición o renuencia, es impertinente, toda vez que una mujer no puede ser violada con su consentimiento. . ." 35 Cyc. 1337.

Los casos de Texas que cita el apelante exponen la jurisprudencia sobre la materia en forma extensa y completa pero la conclusión a que llegan a virtud de los hechos y circunstancias envueltos, no favorece al apelante. Sus resúmenes son así:

"El Código Penal de Tejas, en su artículo 814 lo define como un delito, y prescribe su castigo, si cualquier persona, 'bajo promesa de matrimonio' seduce a una mujer soltera y tiene comercio carnal con ella; y el artículo 815 declara que la palabra 'seducción' se usa en el sentido en que se entiende ordinariamente. *Se resolvió* que para cometer el delito de seducción, el hombre debe, en adición a la pro-

mesa de matrimonio, valerse de algún otro medio fuera de una apelación a la lujuria o pasión de la mujer.'' 16 S.W. 97.

''La perjudicada declaró que el acusado la sedujo bajo promesa de matrimonio inmediato si algo le ocurría, pero que de lo contrario se casaría con ella 'algún tiempo después de las Navidades'. Ella declaró que había tenido comercio carnal con él en tres ocasiones adicionales, la primera de las cuales tuvo lugar más de un año antes, habiéndole hecho el acusado en cada una de esas tres ocasiones una promesa general de matrimonio. *Se resolvió* que ello no constituía seducción.'' 48 S.W. 192.

En el estudio que hemos hecho de la jurisprudencia, es un caso de California el que nos marca el camino a seguir en éste que está sometido a nuestra decisión. Nos referimos al caso de *People* v. *Wallace,* 109 Cal. 611. En lo pertinente, la opinión de la Corte Suprema es como sigue:

''La alegación de que no se probó la seducción, por no haber dado la perjudicada su consentimiento al acto, y que el delito cometido fué el de violación, carece de mérito. Cierto es que la ofendida dice paladinamente que ella no prestó su consentimiento, pero su testimonio, tomado en conjunto, demuestra que sí lo prestó, y el jurado estuvo justificado al llegar a esa conclusión. Es obvio que lo que la perjudicada quiso significar con su testimonio fué que ella no prestó su consentimiento en términos expresos, porque no creía que eso estuviera bien hecho, pero que sus objeciones fueron vencidas por los requiebros del acusado al extremo de que ella se rindió al acto con cierta renuencia. Muy acertadamente, el jurado subordinó las palabras literales que usó la testigo a la substancia y efecto de su prueba.''

Examinemos ahora la declaración de la perjudicada, a la luz de esa doctrina. Si se tomaran en consideración solamente los pasajes que cita el apelante, quizá tendría éste razón, pero ella declaró además así:

''P. ¿Ud. conoce a este acusado?—Sí, señor.

''P. ¿Tuvo alguna relación con él?—Año y medio de relaciones.

''P. ¿De qué clase?—Amorosas.

''P. ¿Quiere decir que era novio suyo?—Novio mío.

''P. ¿El le hizo algún ofrecimiento?—Promesa para casarse conmigo.

''P. ¿Se la hizo a usted únicamente?—A mí y a mi padre también.

"P. ¿Qué le ocurrió a Ud., si le ocurrió algo con este acusado, el día 15 de octubre del año pasado?—El martes quince de octubre me encontraba en casa de Antonio Guiordo cuando llegó Rafael Náter en su automóvil y me dijo que si iba a la Granja, que iba a llevar a otra señorita y que me llevaría a mí de una vez; y al salir del pueblo le preguntaba, que dónde estaba la gente que decía que iba, y me decía que más adelante; y al llegar al empalme de la carretera de Morovis y Vega Baja dobló su automóvil en la carretera que conduce a Manatí.

"  . . . . .

"P. ¿A dónde la llevó?—A la playa de Manatí.

"P. Diga todo lo que hizo con Ud. ese día.—Me llevó, y al llegar al barrio de Campo Alegre de Manatí siguió con su automóvil, pero yo no conozco bien aquellos sitios y pasó por un palmar, y al llegar a un sitio oculto apagó el carro y me tomó por un brazo, a la mala y me hizo bajar, y se internó conmigo en una maleza; limpió el sitio, puso la gorra en el suelo, me agarró a mí, me subió la ropa y se bajó la de él e hizo comercio carnal tres veces.

"P. ¿Antes de realizar el acto le ofreció algo a Ud.?—Casarse conmigo.

"P. ¿Cómo?—Cuando iba, en el camino, le dije que a qué parte se dirigía, y me dijo que a la playa de Manatí, porque su familia no era gustante a la amistad y humillándome se podría casar; y por mucho que hice él siguió en su automóvil a toda velocidad y no me atendió.

"  . . . .

"P. ¿A dónde la llevó?—A la casa de mi cuñado.

"P. ¿Y cuando llegó a la casa de su cuñado?—Me quejé a él en seguida, porque no había sido con gusto mío.

"P. ¿Nunca había tenido contacto carnal con ningún otro hombre?—Con ningún otro hombre.

"A preguntas del abogado Sr. Reyes Delgado, declaró:

"P. ¿Entonces Ud. no lo hizo voluntariamente?—No, señor.

"P. ¿Fué contra su voluntad?—Sí, señor; contra mi voluntad. Me obligó a hacerlo.

"P. ¿Ejerció violencia contra Ud.?—Violencia.

"P. ¿Qué violencia?—Me violó, porque me obligó.

"P. ¿Ud. no accedió a eso?—No, señor.

"  . . . .

"P. ¿Dice que al llegar al empalme de la carretera Morovis-Manatí siguió hacia Manatí?—Sí, señor.

"P. ¿Ud. no conocía esos parajes?—Ninguno.

"P. ¿Y protestó cuando siguió hacia Manatí?—Sí, señor; le rogaba por la mamá de él, que no.

"P. ¿Le suplicaba?—Cuando iba a velocidad me decía que tenía que humillarme a él, porque su familia no era gustante. Le suplicaba y no me atendía.

"P. ¿La amenazaba?—No me amenazaba.

"....

"P. ¿No sabe dónde ocurrieron los hechos?—En la playa de Manatí.

"P. ¿Al llegar allí se desmontó dónde?—Frente a la maleza, en la playa de Manatí.

"P. ¿Allí se internó con Ud.?—Sí, señor.

"P. ¿Se bajó sus ropas y las suyas?—El me bajó la mía y la de él también, en el suelo.

"P. ¿Y usted se opuso?—Me opuse que no, y no me atendió.

"P. ¿Aun cuando él le ofrecía matrimonio, casarse, no quería?—El decía que me tenía que humillarme a él para luego casarse y yo no quería; que mejor se retirara y me dejara como antes.

"P. ¿No se entregó a él porque él le ofreciera casarse con Ud.?—No me entregué."

Tal vez el fiscal con algunas nuevas preguntas después del largo y hábil contrainterrogatorio de la defensa pudo haber puesto de manifiesto el alma de la testigo. Sin embargo, de su declaración tal como está se deduce que no fué a testificar en forma amañada ante la corte y que aun cuando dice y repite que no consintió, es la de ella la negación natural de toda conciencia de mujer honrada que no obstante tratarse del hombre que le ha prometido matrimonio, sabe que el acto que le propone es malo y se va entregando, cediendo, protestando siempre, cada vez más débilmente, hasta rendirse negándose como para satisfacer su último escrúpulo. De no ser así, de no haberse tratado del hombre que desde hacía un año y medio llevaba con ella relaciones amorosas conocidas, con el consentimiento del padre y de sus familiares, no se explica que lo acompañara desde el auto al sitio en que el acto fué realizado, ni que allí dejara que el acusado hiciera lo que quiso de ella, sin una protesta más fuerte, sin una negativa más enérgica. Tratándose de otro hombre, no de tal modo

se hubiera conducido. En su declaración dice que él no la amenazó, que su argumento insistente era que su familia—la del acusado—se oponía a su matrimonio con ella y era necesario que ella se le humillara para luego casarse, y así en ese estado indefinible de consciencia e inconsciencia, persistiendo en una oposición que termina por no ser tal ante la insistencia fuerte, decidida y sugestiva del acusado, realiza la más completa de las humillaciones.

Por virtud de todo lo expuesto entendemos que tampoco se cometió el tercero y último de los errores señalados, y en su consecuencia que *debe declararse el recurso sin lugar y confirmarse la séntencia apelada.*